UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____  )
                             )
PUBLIC EMPLOYEES FOR         )
ENVIRONMENTAL                )
RESPONSIBILITY               )
                             )
              Plaintiff,     )
                             )
         v.                  )   Civil Action No. 18-0158 (CKK)
                             )
U.S. DEPARTMENT OF           )
HOMELAND SECURITY            )
                             )
              Defendant.     )
_____  )

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

**PRELIMINARY STATEMENT**

Plaintiff filed this civil action against defendant United States Department of Homeland Security ("DHS"), alleging that DHS's Federal Emergency Management Agency ("FEMA") violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in connection with plaintiff's request for certain specified information concerning FEMA's 2015 Strategic National Risk Assessment ("SNRA").  Plaintiff has challenged FEMA's withholding of certain information pursuant to FOIA Exemption 5, primarily on the grounds that the information was sufficiently final, that FEMA allegedly has released the information withheld to other entities, relied upon it publicly and within the agency, and that certain factual information can be released without harming the decisionmaking process.

Plaintiff is wrong on all counts. The 2015 SNRA, which was intended to identify risks and hazards FEMA concluded were significant and assess ways to address them, was never finalized by FEMA. Its contents were never represented by FEMA to be final in any way, or to be used as a final product. The factual information plaintiff claims can be released lies at the heart of the decisionmaking process. Its release would reveal FEMA's deliberative process, harm the decisionmaking to which it relates, and cause confusion for the public as to which risks and hazards FEMA deemed significant and how such risks and hazards should be addressed.

As set forth in the defendant's prior memorandum, the Declaration of Gregory Bridges ("Bridges Decl."), the Declaration of Leiloni Stainsby ("Stainsby Decl."), and the attached Supplemental Declaration of Leiloni Stainsby ("Supp. Stainsby Decl."), FEMA has properly withheld certain information pursuant to Exemption 5 of the FOIA.

## ARGUMENT

### I. Pursuant to Exemption 5, FEMA Properly Withheld Information Subject to the Deliberative Process Privilege

Until 2015, FEMA used the SNRA as a vehicle to identify risks and hazards that needed to be addressed in various jurisdictions and to assess how such threats and hazards should be addressed. Supp. Stainby Decl., ¶¶ 2-3. In 2015, FEMA choose the National Threat and Hazard Identification and Risk Assessment ("National THIRA") as its main risk assessment vehicle. Id. at ¶ 2. Certain data from the SNRA was to be used in developing the THIRA. Id. at ¶ 3. As Ms. Stainsby explains:

> Both the THIRA and the SNRA were part of the formulation of a decision that would identify threats and hazards that needed to be addressed in various jurisdictions and how they should go about addressing the threats and hazards identified, pursuant to Presidential Policy Directive 8. [footnote omitted] This

2

involves policy judgments made by FEMA based on selectively culled factual information.

Id. at ¶ 3.

Ms. Stainsby further states that "[i]n 2015, the National THIRA became FEMA's primary national assessment tool to identify national catastrophic threats facing the United States, its tribes and territories, and identifying resources that would be needed to prepare for, mitigate against and most effectively respond to these threats.  The 2015 SNRA that had been drafted was never finalized."  Id. at ¶ 8.

### A.  The Withheld 2015 SNRA Information is Predecisional

FEMA previously demonstrated that the 2015 SRNA documents withheld are predecisional because they were never finalized or publicly released.  Stainsby Decl., ¶¶ 3-4; Bridges Decl., ¶ 10.  Plaintiff challenges the predecisional nature of these documents in various ways.

First, plaintiff argues that "there was no ultimate *policy* decision, or even a process of formulating policy, which disclosure of the SNRA might harm."  Plaintiff's Opp. at 10.  Plaintiff reaches this conclusion based on its claim that FEMA has failed to show the SNRA contained specific policy recommendations or led to any policy decision.  Id.  Plaintiff is wrong on the facts and, to the extent that plaintiff argues that there must by an ultimate policy decision, plaintiff is wrong on the law.

As FEMA demonstrated in its opening memorandum, the Supreme Court has made clear that FEMA is not required to demonstrate that these documents led to any final policy decision.  See Def's Mem. at 4, *quoting* Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 151 n.18 (1975).  Plaintiff's claim to the contrary, made without support, is thus without basis.

3

Additionally, FEMA has demonstrated that the SNRA was indeed part of a policy process intended to carry out FEMA's responsibility to "develop[] guidance and tools to assist communities in tackling their unique preparedness challenges and coordinates the adoption and implementation of a common incident management platform for emergency responders and officials."  Stainsby Decl., ¶¶ 3-4; Supplemental Stainsby Decl., ¶ 3.  FEMA's National Integration Center (NIC) is charged with "helping people and communities become more resilient by developing the capabilities needed to prevent, protect against, respond to, recover from, and mitigate against all threats and hazards."  Stainsby Decl., ¶¶ 3-4.  Deciding which threats and hazards should be identified, as required by Presidential Policy Directive 8,[1] involves policy judgments made by FEMA.  Supp. Stainsby Decl., ¶ 3.   Plainly deciding which threats and hazards need to be addressed, and in which manner, involves policy formulation every bit as much as the State Department deciding which foreign countries pose a threat to this country, and how those threats should be managed, involves foreign "policy" decisions.  Plaintiff's argument to the contrary is untenable.

Plaintiff argues that the 2015 SNRA findings were intended to be a stand-alone document and summarized for public dissemination.  Plaintiff's Opp. at 10.  Even if true, that would only have happened once the 2015 SNRA was finalized.  The fact that a final decision as to which risks and threats merited which type of response was to be made public does not transform the

---

[1] Presidential Policy Directive 8 is designed to strengthen "the security and resilience of the United States through systemic preparation for the threats that pose the greatest risk to the security of the Nation, including acts of terrorism, cyber attacks, pandemics, and catastrophic natural disasters."  PPD-8, p. 1.

predecisional documents addressing this information into final documents.  Supp. Stainsby Decl., ¶ 12.

Plaintiff argues that the documents were "sufficiently final" to be released but cites no facts to demonstrate such a standard.  Plaintiff's Opp. at 10-11.  Moreover, plaintiff cites no authority for the proposition that "sufficiently final" documents somehow lose their predecisional status, even if it could be ascertained what "sufficiently final" actually means.

Plaintiff argues that the 2015 SNRA "has been relied upon by the agency in subsequent materials and communications with Congress."  Plaintiff's Opp. at 7.  Although plaintiff cites no example of the 2015 SNRA being provided to Congress, id., plaintiff cites GAO Acting Director Nathan Anderson and certain public comments he made on February 27, 2019.  Id.

Ms. Stainsby responds that on February 27, 2019:

> Mr. Anderson stated that in June 2016 the Department of Homeland Security (DHS) reported it had completed a planned refresh of the SNRA, which included information on electromagnetic events.  Reply Brief 7-8.  The SNRA documents were intra-agency documents, so other agencies were likely to have possessed and reviewed the drafts.  In addition, as Plaintiff's citation makes clear, Mr. Anderson referenced GAO-16-243 Electromagnetic Threats (2016).  The GAO-16-243 was published in March of 2016, and regarding the SNRA, it states that 'DHS acknowledged this responsibility through its inclusion of EMP as a risk event in the 2015 update of the Strategic National Risk Assessment (SNRA), noting that damage from a deliberate attack on the grid could cause cascading impacts through other infrastructure systems, leading to economic disruption and the potential loss of life.'  GAO-16-243 at 20.  In 2019, Mr. Anderson was not able to reference documents later than the 2016 GAO-16-243 because the 2015 SNRA was never finalized.  This further illustrates that releasing the draft SNRA would cause confusion not just with other federal agencies, but with the public as well, as they would believe the SNRA is still the main national risk assessment vehicle, when it is not.

Supp. Stainsby Decl., ¶ 10.

Plaintiff points to the SNRA Findings that references stakeholder review of assessments, and argues that this demonstrates the deliberative process has been completed.  Plaintiff's Opp. at 8.  Ms. Stainsby responds that "[s]takeholders reviewing the draft findings is only one part of the deliberative process, not the beginning, and certainly not the ending of the process."  Supp. Stainsby Decl., ¶ 11.  Having stakeholders review draft findings as part of the decisionmaking process makes sense, but the 2015 SNRA was never finalized by NPD leadership or publicly released.  Id.

Plaintiff also claims that FEMA has taken an inconsistent position by arguing that the SNRA is predecisional while simultaneously stating that "it was employed as the 'analytical foundation' of the final published National Preparedness Goal and the Planning Frameworks."  Plaintiff's Opp. at 11.  Plaintiff cites the Stainsby Declaration as purported support for this second point.  Id.  But the Stansby Declaration says no such thing.  In that declaration, Ms. Stansby states that "[t]he NIC *intended* the 2015 SRNA Documents to be the risk-based analytic foundation of the National Preparedness Goal."  Id. at ¶ 3 (emphasis added).  That is a far cry from saying that the 2015 SNRA was in fact the analytic foundation of a published National Preparedness Goal.

> The Supplemental Stainsby Declaration explains that:
>
> The National Planning Frameworks documents say the results of the SNRA appear in the National Preparedness Goal, 2nd Edition, but they do not say which version of the SNRA results appear.  That's because only one version of the SNRA was finalized and published: the December 2011 SNRA.  In addition, the National Preparedness Goal, 2nd Edition, was published in September 2015, while the SNRA was still in draft form in November 2015, as indicated in Production 000044.

Id. at ¶ 9.

Plaintiff argues that "there is nothing in the record to indicate what the process was or that it actually concluded or how or why." Plaintiff's Opp. at 12. On the contrary, the Stainsby Declaration explained that the 2015 draft SNRA was developed by FEMA's National Integration Center (NIC), to serve as recommended guidance and tools to assist communities in tackling their unique preparedness challenges. Id. at 3. The NIC forwarded the draft SNRA to several offices within FEMA for review. Id. at 4. The next step was for FEMA's National Preparedness Directorate (NPD) leadership to approve the draft SNRA but that never happened. Id. at 4 & 6. So the process concluded with the 2015 SNRA remaining in draft form, lacking approval by the NPD leadership charged with approving the draft.

Plaintiff tries to make much of the fact that the 2015 SNRA was labelled a "fully adjudicated draft." See, e.g., Plaintiff's Opp. at 14. This label, however, further supports the fact that the documents were predecisional. The term "fully adjudicated draft" as used by FEMA simply meant that it was ready to be reviewed by the NPD leadership. Supp. Stainsby Decl., ¶ 13. Plaintiff's attempt to seize on the words "fully adjudicated" while ignoring the word "draft" is unavailing.

Plaintiff argues, repeatedly, that the withheld information cannot be predecisional because it was used by others outside of FEMA. For example, plaintiff argues that the Rand Corporation prepared a report for DHS in 2018 and referenced the 2015 SNRA results. Plaintiff's Opp. at 18.

Ms. Stainsby responds that:

Plaintiff did not fully quote RAND, which stated the following:

> 'We began data collection by conducting our own search for relevant open-source assessments. The 2015 SNRA was the starting point for data collection,

7

>   although it did not address all threats and hazards included in the HSNRC. The
>   documents found during these initial searches provided a useful, if incomplete,
>   set of data on which to develop the risk summary sheets. In some cases, such as
>   the assessment of natural disaster hazards, the data collected from these initial
>   searches ultimately provided as many as half the citations used in the final risk
>   characterization.'
>
> Homeland Security National Risk Characterization: Risk Assessment Methodology
> (2018) at 34.
>
>   Although RAND believed the draft 2015 SNRA documents were 'useful,'
>   it also believed they were 'incomplete.' This describes draft documents that
>   weren't finalized, the types of documents Exemption 5 was intended to protect.
>   Releasing these documents would cause confusion to federal agencies and the
>   public regarding what FEMA's actual position is regarding risks.

Supp. Stainsby Decl., ¶ 14.

Plaintiff's attempts to show that the information at issue is not predecisional clearly fail. Plaintiff has failed to undermine FEMA's showing that the 2015 SNRA documents were never finalized and thus are predecisional.

### 2. The Withheld Information is Deliberative

Plaintiff argues that the withheld documents cannot be considered deliberative because they have been used to support agency publications. Plaintiff's Opp. at 16. Plaintiff fails to identify any agency publications. Id. To the extent that plaintiff is referring to the Rand Report or the National Planning Frameworks, or GAO, defendant has demonstrated above that the 2015 SNRA was not used in the manner plaintiff suggested. See, supra, at 5 & 7.

Plaintiff argues that the SNRA was a factual tool to be made available to various decisionmakers dealing with preparedness issues. Plaintiff's Opp. at 16-17. In its final form that was the intent of the 2015 SNRA. But since it never was finalized, the information contained in these documents consisted of "proposed factual findings, proposed assessments of information

pertaining to threats and hazards, and other opinions, recommendations, and proposed conclusions made by the authors." Bridges Decl., ¶ 11.  Had the 2015 SNRA received final approval, the factual findings and recommendations contained therein would no longer have been deliberative, because they would have been incorporated into the final document.  But that never happened.

Plaintiff argues that there are no deliberations to chill by disclosing the withheld information "because internal deliberations took place prior to the creation of this draft." Plaintiff's Opp. at 20.  Although what plaintiff means by this unsupported statement is unclear, perhaps plaintiff is arguing that the draft represents the final conclusions of the authors.  Not only does plaintiff cite no support for this statement, but it is undermined by the Bridges and Stainsby declarations.

As Mr. Bridges explains, these documents contain facts concerning threats and hazards perceived by the authors and analyses and proposed conclusions.  The contents of these documents may not reflect FEMA's actual position regarding threats and hazards and how they should be addressed.  Bridges Decl., ¶ 11; Stainsby Decl., ¶ 6.  The contents of these documents were part of the give and take by which FEMA had intended to arrive at a final decision as to which threats and hazards existed and how FEMA recommended they be addressed.  Thus, plaintiff's claim that "'specific threats and hazards' cannot be 'predecisional'", or presumably deliberative, is without basis.  Plaintiff's Opp. at 20.  Specific threats and hazards identified in the withheld documents represent what the authors recommended that their leadership find to be the pertinent hazards and threats, but their assessment was subject to being overruled by FEMA NPD leadership.  Supp. Stainsby Decl., ¶ 11.

9

Plaintiff argues that it makes no sense that FEMA withheld data and factual information on the ground that it was entangled with FEMA's analyses and conclusions "but [did] not withhold or even identify, the purported analyses and conclusions themselves." Plaintiff's Opp. at 20. Plaintiff's point is unclear, given that plaintiff points to no evidence where FEMA's analyses or conclusions were released. Id.

Plaintiff also argues that FEMA's claim that release of these predecisional, deliberative documents might cause confusion to the public is belied by the fact that the agency publicly relied on this information. Plaintiff's Opp.at 21, *citing* footnote 5 at 17. Ms. Stainsby explains plaintiff is wrong:

> In footnote 5, the quote from the National Prevention Framework, Second Edition (2016) references the National Preparedness Goal, Second Edition, which was published in September 2015, while the 2015 SNRA was still being drafted through November 2015. Production 000044. The same is true for Plaintiff's citations to the National Mitigation Framework, Second Edition (2016), and the National Response Framework, Third Edition (2016): both documents explicitly reference the National Preparedness Goal, Second Edition (2015). In addition, the National Preparedness Goal fails to state which version of the SNRA results appear, because only one version of the SNRA was finalized and published: the December 2011 SNRA.

Supp. Stainsby Decl., ¶ 9.

Plaintiff argues that "it is unreasonable to conclude that there are sensitive deliberations in unreleased final drafts which have passed the adjudicative process and whose anonymous authors knew in advance would be made public." Plaintiff's Opp. at 21. Plaintiff misunderstands the process as well as the purpose of Exemption 5.

This Circuit has made clear that Exemption 5 is intended to protect the agency's decision-making process, not just the contents of specific documents. Mead Data Central Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977) ("Exemption five is intended to protect

the deliberative process of government and not just deliberative material."). FEMA decisionmakers need to be able to rely on their employees participating in the creation of the SNRA draft documents to identify all potential threats and hazards that the drafters believe constitutes a threat and/or hazard that needs to be addressed, in the manner recommended by the authors. But drafters may well be hesitant to recommend certain threats and hazards, or ways to address them, if they knew that any of their suggestions not be adopted by FEMA leadership would still be made public, or be made public even in the absence of a final agency decision. Supp. Stainsby Decl., ¶ 12.

      Plaintiff argues that the factual information withheld, which FEMA explained consists of judgment calls made to select facts from a larger set of facts concerning possible threats and hazards, is "impossible for Plaintiff to evaluate" but that there is no evidence that any part of the SNRA was rejected or superseded by the agency. Plaintiff's Opp. at 22. This presupposes that the next step was for the SNRA to be rejected or superceded. In fact, the next step was for the SNRA to be adopted, in whole, or in part or in amended form, as the final FEMA position on threats and hazards in need of being addressed. But this did not happen.

      Plaintiff cites to Playboy Enterprises, Inc. v. Dep't of Justice, 677 F.2d 931 (D.C. Cir. 1982), as purported support for the proposition that selecting facts from a larger set of facts does not bring the smaller set of facts within the protection of Exemption 5. Plaintiff's Opp. at 22-23. But the factual information and decisionmaking process in Playboy Enterprises were far different. In that case, a task force was charged with investigating facts surrounding an FBI informant and how he was treated by the FBI and issuing a report to the Attorney General, who was then charged with making the factual information available to Congress; that was the task

force's sole mission.  Id. at 933, 935-36.  The Court of Appeals held that purely factual information that could be segregated from the task force's recommendations should be released.  Id.

In Playboy Enterprises, there was no judgment call involving assessing the significance of a particular fact and its relevance to a final decision as to whether the fact should be considered for a final assessment-type of report; it was simply pure fact gathering.  By contrast, here the factual information and data was compiled to allow FEMA leadership an opportunity to decide if the threats and hazards purportedly identified by the facts chosen should in fact be considered threats and hazards by FEMA in need of being addressed.

Plaintiff also relies on Lahr v. NTSB, 453 F. Supp.2d 1153 (C.D. Cal. 2006).  In that case, the Court held that radar data associated with an airplane crash could not be withheld simply because it consisted of facts taken from a larger set of facts.  Id, at 1187.  The Court concluded that the government had failed to show how release of the factual information would impinge on the deliberative process.  Id.

Here, by contrast, defendant has demonstrated that the factual information is completely entangled with the analyses of proposed threats and hazards.  Bridges Decl., ¶ 11.  As Ms. Stainby explains:

> Each of the updated risks is based on sets of facts selected from a larger set of facts by the drafters who were recommending that a specific risk or hazard be included in the final SNRA. Releasing these facts would allow for the updated recommended risks to be identified, which would cause confusion to the public, as these updated risks do not represent FEMA's current position regarding risks.

Supp. Stainsby Decl., ¶ 17.

Plaintiff argues that FEMA's disclosure of certain SNRA Guidance documents "has

already caused whatever attenuated harm to decisionmaking processes which FEMA has alleged." Plaintiff's Opp. at 25. On the contrary. Ms. Stainsby points out that:

> These documents are guidance documents, containing instructions and templates. They do not include any of the threats, risks, analysis, data, or conclusions that were redacted. Plaintiff's claim that the disclosure of these guidance documents "discloses essentially the entire deliberative process" is inaccurate. *Id*. at 27. These guidance documents show stakeholders how to participate in the SNRA process: to send data and risk summary sheets to FEMA. They do not describe the approval process mentioned in paragraph 4 of my previous Declaration or reveal any of the deliberative material that was redacted.

Supp. Stainsby Decl., ¶ 15. Thus, FEMA's disclosure of these Guidance documents has nothing to do with FEMA's need to withhold factual data underlying recommended risks in a predecisional document.

Plaintiff attempts to undercut defendant's reliance on <u>Mapother</u> v. <u>Department of justice</u>, 3 F.3d 1533 (D.C. Cir. 1993), by arguing that <u>Mapother</u> dealt with fact summaries prepared to help the decisionmaker make a discretionary decision as to whether a specific person should be barred from entering the country. Plaintiff's Opp. at 25. Plaintiff claims that this is different than "a factual 'summary' of a number of threats[.]" Plaintiff's Opp. at 25.

On the contrary, the factual information withheld here is very similar to what was at issue in <u>Mapother</u>. In both cases factual information was compiled to determine whether a threat existed, and the decisionmaker had to decide whether the threat in fact existed and, if so, how it should be addressed. The fact that there was a final decision in <u>Mapother</u>, and no final decision here, fails to undercut the similarity of these cases.

Plaintiff also fails to undercut defendant's reliance on <u>Ancient Coin Collectors Guild</u> v. <u>U.S. Dep't of State</u>, 641 F.3d 504, 513 (D.C. Cir. 2011). Plaintiff concedes that this case stands for the proposition that factual information that reflects what issues are important to the

predecisional findings and recommendations are properly withheld. Plaintiff's Opp. at 26. Plaintiff argues that in the instant case the factual information "concerns a very broad array of risks and harms not specific to any decisionmaker or decision." Plaintiff's Opp. at 26.

This observation is manifestly erroneous. The decision at issue in this case involved which risks and threats FEMA would deem appropriate to include in a national risk assessment document. The risks and threats identified in the draft 2015 SNRA included factual information the drafters thought FEMA leadership should adopt as the agency's final position. Thus, the information was a critical part of the decisionmaking process.

Finally, plaintiff fails to overcome the fact that release of the draft SNRA could cause confusion for the public by revealing potential threats and hazards that FEMA never adopted as actual threats and hazards that needed to be addressed in the manner suggested by the analyses and recommendations. "Release of this information would therefore cause confusion to the public and may result in members of the public taking action on potential threats and hazards where no action is warranted, or not the action suggested by a recommendation contained in the documents." Bridges Decl., ¶ 12.

Accordingly, plaintiff has failed to undermine defendant's showing that the information withheld here is predecisional and deliberative in nature, including the factual information, and that its release would harm the agency's decision-making process in ways courts have recognized should be prevented through the application of FOIA Exemption 5.

Consequently, defendant's invocation of Exemption 5 here should be upheld.

## II.  FEMA Has Complied with FOIA's Segegability Requirement.

Plaintiff argues that FEMA has failed to reasonably segregate all non-exempt information.  As an example, plaintiff points to the Risk Summary Sheets table of contents in the SNRA technical Appendix.  Plaintiff's Opp. at 28.  Ms. Stainby responds that:

> The redacted portions of the table of contents contains "[a] list of new and updated risks identified in the 2015 SNRA."  Vaughn Index 51.  Withholding the new and updated risks identified in the table of contents is consistent with the withholdings throughout the SNRA documents.  Even though the Risk Summary Sheet authors were told to expect scrutiny from the public and other stakeholders, the underlying assumption is that this would happen after the 2015 SNRA documents were finalized and published, which did not occur.  Releasing the new and updated risks in the SNRA would cause public confusion, as they would not represent FEMA's current position regarding risks, which can be found in the National THIRA.

Supp. Stainsby Decl., ¶ 16.

Plaintiff also points to the SNRA Guidance and Technical Appendix.  Plaintiff's Opp. at 29.  The Guidance documents were released.  Supp. Stainsby Decl., ¶ 15.  The Technical Appendix cannot be released because it contains a description of the risks identified.  Id. at ¶ 15.

FEMA conducted a line-by-line review of all of the withheld information to ensure that it contained no segregable, nonexempt information, and concluded that no further information could be reasonably segregated from the exempt information and released, including factual information.  Bridges Decl., ¶ 15.  Plaintiff has failed to show any error with respect to this issue.

## CONCLUSION

Accordingly, for all of the reasons set forth above, in defendant's prior memorandum, and in defendant's declarations, defendant respectfully submits that its motion for summary

15

judgment should be granted, and plaintiff's cross-motion for summary judgment should be denied.

        Respectfully submitted,

        JESSIE K. LIU,
        D.C. BAR # 472845
        United States Attorney
           for the District of Columbia


        DANIEL F. VAN HORN,
        D.C. BAR #924092
        Chief, Civil Division

        /s/ *Marina Utgoff Braswell*
        MARINA UTGOFF BRASWELL,
        D.C. BAR #416587
        Assistant United States Attorney
        U.S. Attorney's Office
        555 4th Street, N.W. - Civil Division
        Washington, D.C. 20530
        (202) 252-2561
        Marina.Braswell@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )   Civil Action No. 18-0158 (CKK) |
| U.S. DEPARTMENT OF HOMELAND SECURITY | ) ) ) ) |
| Defendant. | ) ) |

**ORDER**

Upon consideration of defendant's motion for summary judgment, plaintiff's opposition and cross-motion for summary judgment, and the entire record in this case, the Court finds that there are no issues of material fact and the defendant is entitled to judgment as a matter of law. Therefore, it is hereby

ORDERED that plaintiff's cross-motion for summary judgment is denied; and it is further

ORDERED that defendant's motion for summary judgment is granted.

This is a final, appealable order.

_____
UNITED STATES DISTRICT JUDGE