**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY<br><br>            Plaintiffs,<br>     v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY<br><br>            Defendant. | Civil Case No. 18-158 |

**MEMORANDUM IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

Table of Contents ........................................................................................................... i

Table of Authorities ..................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ................................................................................................................. 1

   I.   DEFENDANT DOES NOT IDENTIFY A FORESEEABLE HARM TO AN INTEREST PROTECTED BY EXEMPTION 5 FROM RELEASING THE SNRA ...................... 1

   II.   THE WITHHELD MATERIALS ARE NOT PREDECISIONAL BECAUSE THEY DO NOT CONTRIBUTE TO ANY PARTICULAR DECISION OR INVOLVE THE ONGOING DEVELOPMENT OF AGENCY POLICY ........................................................... 3

   III.   THE 2015 SNRA DOCUMENTS DO NOT REVEAL THE DELIBERATIVE PROCESS ................................................................................................................ 8

      A.   There is No Risk of Public Confusion ................................................................ 9

      B.   DHS Overstates the Deliberative Value of Facts Culled from Larger Sets of Facts 10

CONCLUSION ........................................................................................................... 14

# **Table of Authorities**

**Cases**

*Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) ............................ 3

*Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C. Cir. 1980) .......... 8

*Dudman Communications Corp. v. Dep't of Air Force*, 815 F.2d 1565 (D.C. Cir. 1987) . 3, 13

*Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770 (D.C. Cir. 1981) ......................................... 7

*Judicial Watch, Inc. v. United States Dep't of Commerce*, 2019 U.S. Dist. LEXIS 48374 (D.D.C. 2019) ................................................................................................................. 2

*Lahr v. NTSB*, 453 F. Supp.2d 1153 (C.D. Cal. 2006) ................................................... 11

*Mapother v. Dep't of Justice*, 3 F.3d 1533 (D.C. Cir. 1993) ............................................. 12, 13

*Nat'l Sec. Archive v. CIA*, 752 F.3d 460 (2014) ........................................................... 13

*NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132 (1975) ..................................................... 4

*Paisley v. CIA*, 712 F.2d 686 (D.C. Cir. 1983) ............................................................... 4

*Petroleum Info. Corp. v. United States Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992) ............................................................................................................................. 9, 10

*Playboy Enters., Inc. v. Dep't of Justice*, 677 F.2d 931 (1982) ..................................... 10, 11

*Russell v. Dep't of Air Force*, 682 F.2d 1045 (D.C. Cir. 1982) ............................................. 13

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) ...................................... 6

**Statutes**

5 U.S.C. § 552 ................................................................................................................ 2

**Other Authorities**

DHS, NATIONAL PREPAREDNESS GOAL 2D ED (2015) .................................................................. 5, 6

DHS, STRATEGIC NATIONAL RISK ASSESSMENT, Unclassified Overview (2011) ...................... 6

GAO, ABOUT GAO, OVERVIEW (last visited May 28, 2019) ......................................................... 7

Nathan Anderson, GAO, *Electromagnetic Events Roundtable Discussion: Key GAO Findings and Recommendations* (Feb. 27, 2019) .................................................................... 7

RAND CORP., HOMELAND SECURITY NATIONAL RISK CHARACTERIZATION: RISK ASSESSMENT METHODOLOGY 34 (2018) ........................................................................................................ 8

**PRELIMINARY STATEMENT**

Plaintiff Public Employees for Environmental Responsibility ("Plaintiff" or "PEER") has clearly demonstrated its right to information wrongfully withheld by Defendant U.S. Department of Homeland Security ("Defendant" or "DHS"), the 2015 update to the Strategic National Risk Assessment ("SNRA") completed by the Federal Emergency Management Agency ("FEMA"). Defendant attempts to imply that Plaintiff's argument is advancing novel but baseless legal theories by seizing on cherry-picked language cross-motion, such as "sufficiently final" or "internal deliberations." *See* Def.'s Mem. of P. & A. in Opp'n to Pl.'s Cross.-Mot. for Summ. J. 1, 5, 9 [*hereinafter* Def.'s Opp.]. The Court should discard these straw-men arguments and rule on the simple grounds that there is no clearly articulated way that disclosure of the SNRA materials will harm the decisionmaking process within FEMA. Defendant does not discuss or attempt to meet the "foreseeable harm" standard in its supplementary declaration or briefing. This is because Defendant cannot meet that standard on this record, and consequently lacks grounds to withhold the SNRA.

**ARGUMENT**

**I.   DEFENDANT DOES NOT IDENTIFY A FORESEEABLE HARM TO AN INTEREST PROTECTED BY EXEMPTION 5 FROM RELEASING THE SNRA**

Defendant's supplementary declaration and briefing spends some time discussing an unrelated document, the National Threat Hazard Identification and Risk Assessment ("THIRA"). This discussion takes place before the arguments that the SNRA is predecisional or deliberative and is not mentioned again, but to the extent it is relative to those discussions, it only provides further evidence that the SNRA is not

1

predecisional. Any role played by the SNRA in the ongoing examination of agency policy was supplanted by the THIRA in 2015 as "FEMA's primary national assessment tool to identify national catastrophic threats." Supp. Decl. of Leiloni Stainsby ¶¶ 3-8 [*hereinafter* Supp. Decl.]; Def.'s Opp. 2-3.

The discussion also excludes any mention of the "foreseeable harm" rule, that an agency can withhold information *only* if it "reasonably foresees that disclosure would harm an interest protected" by the claimed exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I). The closest Defendant comes to identifying such a harm is the claim that "authors of the draft SNRA *may well have been* chilled from including certain facts, analyses, and recommendations if they knew that these would be released even if rejected during the final approval process." Supp. Decl. ¶ 12 (emphasis added). This speculative explanation fails to meet FOIA's standards. "The question is not whether disclosure could chill speech, but rather if it is reasonably foreseeable that it will chill speech and, if so, what is the link between this harm and the specific information contained in the material withheld." *Judicial Watch, Inc. v. United States Dep't of Commerce*, 2019 U.S. Dist. LEXIS 48374, *15 (D.D.C. 2019) (rejecting affidavit stating "that such disclosures '*could* chill speech' and could have an effect on interagency discussion" (emphasis in original)).

There is no discussion of how this specific disclosure would harm future decisionmaking processes, nor is there an explanation of why agency line staff would feel chilled. It is not clear that agency experts had any foreknowledge while they were preparing the SNRA of whose decision it would be to finalize the SNRA, and they also knew in advance that "[t]he 2015 SNRA is likely to be one of FEMA's most scrutinized

2

analytic products." Decl. of Paula Dinerstein, Exhibit A 33 (guidance section for analysts) [*hereinafter* Production]. They knew that the document would include the caveat that it reflected "the best, but human, judgment of the SNRA project team." Production 120. What might *actually* chill the SNRA project team experts would be knowledge that the data sources they relied upon in reaching their conclusion might be redacted, leaving any other judgments they made unsupported. *See* Production 122 (Data Sources Used); 74-75, 79-83, 124-25 (footnotes supporting unredacted text); 85 ("All sources and estimates were documented to promote credibility, defensibility, and transparency within the assessment.").

The agency's attempts at clarification further confuse understanding of the 2015 SNRA, and do nothing to articulate an actual harm to agency processes by disclosure. DHS has the powerful advantage of having a presumption of good faith attach to their declarations. As the side that also has exclusive access to the evidence, Defendant is obligated under FOIA to do far more to answer the "key question" here: whether disclosure would tend to "discourage candid discussion within the agency." *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (*quoting Dudman Communications Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987)).

## II. THE WITHHELD MATERIALS ARE NOT PREDECISIONAL BECAUSE THEY DO NOT CONTRIBUTE TO ANY PARTICULAR DECISION OR INVOLVE THE ONGOING DEVELOPMENT OF AGENCY POLICY

Defendant continues to rely solely on the Supreme Court's note in *NLRB v. Sears, Roebuck, & Co.*, that it need not identify "a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in

3

a continuing process of examining their policies." 421 U.S. 132, 151 n.18 (1975). Plaintiff does not dispute that predecisional documents include those which are a part of the continuing process of examining agency policies, and neither did the D.C. Circuit Court of Appeals eight years later when it decided *Paisley v. CIA*, 712 F.2d 686, 698 (D.C. Cir. 1983). Nevertheless, the "continuing process of examining their policies" the Supreme Court referenced in *NLRB*, 421 U.S. at 151 n.18, is not a grant of *carte blanche* to hide all nonpublic documents because they might relate generally to the factual basis for some unspecified agency decisions.

Furthermore, Defendant flatly contradicts itself on the role of the SNRA in the policymaking process. DHS first argues that "the SNRA was indeed part of a policy process intended to carry out FEMA's responsibility" relating to implementing a threat management and incident response platform. Def.'s Opp. 4 (citing Decl. of Leiloni Stainsby ¶¶ 3-4 (supporting opening brief); Supp. Decl. ¶ 3). Two pages later, DHS contends that SNRA was *not* part of the policymaking process related to the National Preparedness Goal and Planning Frameworks because saying "'[t]he NIC *intended* the 2015 SNRA Documents to be the risk-based analytic foundation of the National Preparedness Goal' . . . is a far cry from saying that the 2015 SNRA was in fact" such foundation. Def.'s Opp. 6 (emphasis in original). DHS then goes on to claim that the National Preparedness Goal could not have possibly relied on the 2015 SNRA because it was published in advance of the SNRA's completion. *Id*. DHS has been very unclear about the role of the SNRA in the "continuing process of examining their policies," *NLRB*, 421 U.S., at 151 n.18, and the agency has declared that the only agency

policies it could have contributed to examination of, the National Preparedness Goal and other PPD-8 documents, were unrelated to it.

DHS acknowledges this inconsistency but does little to clarify it. Def.'s Opp. 6. The agency does not have to point to a specific rulemaking in the Federal Register or prosecution decision for a document to be predecisional, but it must at least specify which, if any, policies it examined or contributed to. The agency claims that the 2015 SNRA could not have been the basis for the 2015 National Preparedness Goal ("NPG") update because there was only one SNRA in existence when the NPG update was published in 2015, and the NPG does not specify the date of the SNRA it is citing to. *See* Def.'s Opp. 6.[1] The 2015 NPG contains a brief summary of the SNRA's findings, however, which includes several items not appearing in the 2011 SNRA, identified in bold:

- Natural hazards, including hurricanes, earthquakes, tornadoes, **droughts**, wildfires, **winter storms**, and floods, present a significant and varied risk across the country. **Climate change has the potential to cause the consequence of weather-related hazards to become more severe**. [. . .]
- Technological and accidental hazards, such as **transportation system failures**, dam failures, chemical spills or releases, have the potential to cause extensive fatalities and severe economic impacts. In addition, these hazards may increase due to aging infrastructure

DHS, NATIONAL PREPAREDNESS GOAL 2D ED. 4-5 (2015) (emphasis added) [*hereinafter* "NPG"].[2] These risks are not only absent from the 2011 SNRA, which is

---

[1] The block quote appearing at Def.'s Opp. 6 cites to Supp. Decl. ¶ 9, but the text of the quote on page 6 of the opposition brief do not appear to be in either declaration submitted by Leiloni Stainsby. The analysis that the NPG does not specify which SNRA it cites to, however, is accurate.

[2] available at https://www.fema.gov/media-library-data/1443799615171-2aae90be55041740f97e8532fc680d40/National_Preparedness_Goal_2nd_Edition.pdf.

5

nonpublic, but were explicitly *not* included in the publicly available summary of the 2011 SNRA:

> Table 1 is not a complete list of risks that exist and will be reconsidered in future iterations of the assessment. Additional threats and hazards, such as **droughts**, heat waves, **winter storms**, rain storms, and different types of technological/accidental or human-caused hazards, can also pose a risk to jurisdictions across the country and should be considered, as appropriate, in preparedness planning. [. . .] In addition, assessment **participants identified a number of events for possible inclusion in future iterations of the SNRA, including** electric grid failure, plant disease outbreak, and **transportation system failure**.
>
> DHS, STRATEGIC NATIONAL RISK ASSESSMENT, Unclassified Overview 4-5 (2011).[3]

The 2011 SNRA also explicitly excludes analysis of "environmental, and societal trends that may contribute to a changing risk environment but are not explicitly homeland security national-level events," such as climate change, which does not appear as "global warming" or "climate change" in the 2011 summary. *Id.*, at 2.

The takeaway is that while DHS argues the 2015 SNRA is predecisional, it refuses to point to an agency policy that it contributed to, even though it appears that the 2015 SNRA contributed to the 2015 NPG. The agency says that is impossible, presumably because to admit the 2015 NPG relied on the 2015 SNRA could undercut the argument that the 2015 SNRA is deliberative. These confusing stances are highlighted to urge the Court to take a closer look at the evidence and arguments put forward by the agency. "Agency affidavits [submitted in FOIA cases] are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims . . . ." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground*

---

[3] available at https://www.fema.gov/media-library-data/20130726-1854-25045-5035/rma_strategic_national_risk_assessment_ppd8_1_.pdf

*Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). While this dispute does not involve an insufficient search claim, applying the same standard, Plaintiff has "point[ed] to evidence sufficient to put the Agency's good faith into doubt" regarding why the 2015 SNRA is predecisional, its role in the decisionmaking process, and the deliberations in that document. *Ground Saucer Watch*, 692 F.2d at 771.

The inconsistent position taken by DHS is worsened by the agency's further attempts at explanation. The agency states that the 2015 SNRA update was never provided to Congress, yet the 2016 GAO Report GAO-16-243 on Electromagnetic Threats both cites to the 2015 SNRA update and discusses its completion. *See* Supp. Decl. ¶ 10; Def.'s Opp. 5. This explanation seems to imply that GAO, which is undeniably an agency of Congress,[4] was either wrong about the SNRA and never corrected by FEMA, or actively misled when "[i]n June, 2016 *DHS reported* that the department completed the planned refresh of the Strategic National Risk Assessment." Nathan Anderson, GAO, *Electromagnetic Events Roundtable Discussion: Key GAO Findings and Recommendations* (Feb. 27, 2019), https://www.hsgac.senate.gov/imo/media/doc/Testimony-Anderson-2019-02-27.pdf (emphasis added).

For the RAND report which cites to the SNRA, DHS finds special significance in the language "useful, if incomplete" in RAND's description of the 2015 SNRA. *See*

---

[4] *See* GAO, ABOUT GAO, OVERVIEW (last visited May 28, 2019), https://www.gao.gov/about/ ("The U.S. Government Accountability Office (GAO) is an independent, nonpartisan agency that works for Congress. Often called the "congressional watchdog," GAO examines how taxpayer dollars are spent and provides Congress and federal agencies with objective, reliable information to help the government save money and work more efficiently.").

Supp. Decl. ¶ 14; Def.'s Opp. 8. Leilani Stainsby declares that this was meant to describe unfinished documents. *Id*. This is not supported by the context of the statement, which emphasizes that the SNRA "did not address all threats and hazards included in the HSNRC," the report RAND ultimately prepared. RAND CORP., HOMELAND SECURITY NATIONAL RISK CHARACTERIZATION: RISK ASSESSMENT METHODOLOGY 34 (2018), https://www.rand.org/content/dam/rand/pubs/research_reports/RR2100/RR2140/RAND_RR2140.pdf. The "incomplete" descriptor of the SNRA was thus not in reference to its state of readiness, but to its scope of analysis. To the extent the Supplemental Declaration seeks to act as independent evidence of the RAND authors' state of mind it is also hearsay. To the extent FEMA relies on the unfinished nature of SNRA as grounds for withholding, it is clearly unfinished in name only, and the only public confusion created is by the agency's insistence on hiding it.

### III. THE 2015 SNRA DOCUMENTS DO NOT REVEAL THE DELIBERATIVE PROCESS

The most important thing to remember about the withheld materials is that they reflect a "fully adjudicated draft" of the SNRA. Production 70. Subsequent reliance by GAO, RAND, and implicit reliance by FEMA itself in the 2015 NPG's risk summary of SNRA's contents all demonstrate that the "give and take" of agency decisionmaking was completed. *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Plaintiff's cross-motion argued that because it is unclear what the final stage of review for SNRA's 2015 update actually was, it was impossible to understand the state of ongoing deliberations in the 2015 SNRA. Certainly the reviewing and authoring agency experts anticipated that, when approved, it was in a state that would be publicly released without unreasonably

8

disclosing their deliberations. Defendant admits in its briefing that if signed the documents would no longer be deliberative. Def.'s Opp. 9.

    *A.      There is No Risk of Public Confusion.*

The specific harm repeated by the agency in its briefing and declaration is that disclosure would cause public confusion about the agency's actual stance on risks and confusion among other federal agencies about what FEMA's stance was on national risks. Supp. Decl. ¶¶ 10, 14, 16, 17; Def.'s Opp. 9-11, 14. This generic and speculative threat of harm has been repeatedly rejected in this Circuit. *See Petroleum Info. Corp. v. United States Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992) (holding confusion could be prevented by disclosing incomplete nature of documents to requester).

In *Petroleum Info. Corp.*, the Department of the Interior argued that public release of older draft documents compiled from publicly available information would cause confusion because it may be inaccurate or inconsistent with the Department's then-current data. *Id*. The court ruled that the agency failed to explain how "its concerns with public confusion and harming its own reputation could not be allayed by conspicuously warning FOIA requesters that the LLD file is as yet unofficial and that the Bureau disclaims responsibility for any errors or gaps." *Id*., at 1437. The SNRA, like the materials in *Petroleum Info. Corp.*, was meant to be based on "unclassified data, analysis, and models used to derive the top level numbers from publicly accessible cited sources" and "documented in sufficient detail that an independent reanalysis could be undertaken by a qualified member of the public." Production 13.

The law is clear that "the risk of public confusion as a subsidiary rationale for the deliberative process privilege . . . does not support a blanket exemption for information marred by errors, particularly when the information is in large part already public." *Petroleum Info. Corp.*, 976 F.2d at 1437 n.10. Even though Defendant claims it has shifted to a new THIRA risk reporting system, "nothing prevents [the agency] from warning users that the file is unfinished, subject to change, [or] part of a total [] system still in progress." *Id.*, at 1439.[5]

### B. DHS Overstates the Deliberative Value of Facts Culled from Larger Sets of Facts

There are four disputed cases on the deliberative nature of selectively chosen factual material under Exemption 5 of FOIA. DHS misreads them as providing blanket protection for any portions of any unreleased documents that conduct any analysis or application of those facts. Not only is this a flawed interpretation, it would cause Exemption 5 to swallow almost all of FOIA.

First, the agency challenges that *Playboy Enters., Inc. v. Dep't of Justice*, 677 F.2d 931 (1982), does not involve agency employees making judgment calls about the relevance of particular facts for a "final assessment-type of report" as FEMA's analysts have in this case.; Def.'s Opp. 12. This is not only incorrect, it *repeats* the excuse used by DOJ in *Playboy* when they argued "that the entire Rowe Report reflects the 'choice, weighing and analysis of facts' by the task force" and "'the very narration of the facts

---

[5] Such caveats already litter portions of the SNRA which were not redacted. *See* Production at 2 (": The SNRA is not intended to include a definitive list of all risks, real or potential."), 77 (data limitations), 85 (stating that SNRA does not exercise final "risk judgment"), 118 (redacting limitations), 363 (discussing limitations), 368 (same).

that reflects the evidence selected and credited.'" *Id.*, at 935 (quoting *Playboy* Defendant's brief). That court rejected the agency's argument for the same reason this Court should:

> Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material. If this were not so, every factual report would be protected as a part of the deliberative process.

*Id.* DHS's argument that that case did not involve "assessing the significance of a particular fact" is incompatible with DOJ's characterization of its activities, and is fundamentally a disagreement with the reasoning of the *Playboy* court. Def.'s Opp. 12.

Second, DHS attempts to distinguish *Lahr v. NTSB*, 453 F. Supp.2d 1153 (C.D. Cal. 2006), on the grounds that DHS has demonstrated that factual information is hopelessly intertwined with sensitive deliberations. Def.'s Opp. 12. No such demonstration has been made beyond the conclusory statements made in the agency's original declarations and addressed in Plaintiff's cross-motion briefing. In supplemental declaration, DHS adds only that there are new risks as yet undisclosed by FEMA which could be inferred if factual material underlying those analyses were released, causing confusion to the public. This could be possible, but that harm was already caused by subsequent reliance on the 2015 SNRA by, *inter alia*, the 2015 NPG, which summarized the risks in the SNRA as including risks not appearing in its 2011 incarnation, such as climate change and winter storms, which almost certainly came from the 2015 update to the SNRA. *See* Section I, *supra* p. 4-6 (comparison of 2015 NPG and 2011 SNRA). It also does not justify the redaction of information copied directly from the 2011 SNRA. *See* Production 79-80 (redaction of table containing

11

information from the 2011 SNRA); 350-563 (redacted reproduction of the 2011 SNRA). Furthermore, there is no risk of public confusion because FEMA can include a disclaimer that the risks and information identified may not reflect the agency's current thinking. *See* Subsection A, *supra* this Section.

Third, DHS seeks to rehabilitate its reliance on *Mapother v. Dep't of Justice*, 3 F.3d 1533 (D.C. Cir. 1993), by suggesting that the SNRA is analytically indistinguishable from a special-purpose factual report prepared to assist a single decisionmaker in making a sensitive discretionary decision. Def.'s Opp. 13. While it is true that the SNRA is designed to assist a broad array of decisionmakers make determinations about the severity of threats and decide how to respond, the SNRA explicitly refrains from making all-risk judgment calls and is overwhelmingly clear that it is meant to be scrutinized by a broad set of stakeholders for an inconceivable number of decisions. See Production 28 (SNRA "must make comparative judgments of national risk across many contexts for many decision-makers and many stakeholders having a diversity of values.").[6] The interest in protecting the sensitive thoughts and opinions of an agency expert relating to a politically sensitive decision regarding the Nazi past of a foreign head of state, the decision in *Mapother*, is of an entirely different character than the interest in hiding the elsewhere-disclosed final draft of a general-purpose and publicly-sourced guide to the details of high visibility

---

[6] *See also* Production at 2 (": The SNRA is not intended to include a definitive list of all risks, real or potential."), 11 (the SNRA "will be closely scrutinized by responsible leadership, reviewers in the U.S. risk science and policy communities, and state, local, tribal, and territorial planners and emergency managers."), 85 (stating that SNRA does not exercise final "risk judgment").

12

risks such as hurricanes or space weather for municipal, state, or federal employees to understand. Additionally, the absence of a final draft against which to compare an earlier draft gets to the heart of the deliberative character of a document:

> The court has thus treated certain draft agency histories as protected from disclosure under Exemption 5, reasoning that the "disclosure of editorial judgments" made during the agency's deliberative process "would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work." *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987); *see Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982). In each case, the court shielded draft histories from disclosure because the agency's deliberative process would be revealed by means of "'a simple comparison between the pages sought and the final, published document," which "would reveal what material supplied by subordinates senior officials judged appropriate for the history and" what they did not. *Mapother*, 3 F.3d at 1538 (quoting *Russell*, 682 F.2d at 1049, and noting that *Dudman Commc'ns*, 815 F.2d at 1569, reaffirmed *Russell's* rationale)
>
> [. . .]
>
> It is one thing to conclude that disclosure of a draft could 'stifle . . . creative thinking and candid exchange of ideas,' *Dudman Communications*, 815 F.2d at 1569, where it is possible to identify editorial judgments by comparing the draft and the final version, and quite another to conclude stifling could occur where there is no final version . . . .

*Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 467-68 (2014) (Rogers, J., dissenting). The rationale of *Mapother*, ultimately, affirms that Exemption 5 has to do with the candid nature of ideas in sensitive settings. There is nothing potentially candid or unguarded about a meticulously sourced, thoroughly reviewed risk assessment prepared after participation from several agencies and a diverse team of experts into a final version.

Finally, DHS argues that Plaintiff's characterization of the SNRA as a set of factual information concerning a "broad array of risks and harms not specific to any decisionmaker or decision" is "manifestly erroneous." This post-hoc description of

SNRA is belied by the document itself, which plainly states that it "must make comparative judgments of national risk across many contexts for many decision-makers and many stakeholders having a diversity of values." Production 28, *see also* n. 6, *supra*. Defendant's argument that the 2015 SNRA is deliberative as to whether to approve the 2015 SNRA is tautological and would justify withholding *any* draft of *any* document, regardless of content. Def.'s Opp. 14 ("The decision at issue in this case involved which risks and threats FEMA would deem appropriate to include in a national risk assessment document.").

## **CONCLUSION**

DHS has demonstrated an improper disregard for FOIA and the judicial decisions applying it. This is evident from the cursory nature of its attempt to comply with Plaintiff's FOIA request by refusing to segregate non-deliberative or non-pre-decisional materials. Even accepting every legal argument made by the department, there is *no* justification for withholding the reproduction of the 2011 SNRA, clearly a final document, on Exemption 5 grounds. *See* Production 350-563. It is also evident from the agency's shallow and generic prophesies of public chaos or a chilling effect on agency deliberations should the 2015 SNRA be disclosed. It is unclear why FEMA actually wants to withhold this document, which was prepared at great expense by an elite team of specialists to help all levels of government make the country safer. What is clear is that the agency is unable to present a plausible, non-superficial reason why it chose not to release the 2015 SNRA update in response to a proper FOIA request. For these reasons the Court should enter an order granting Plaintiff's cross-motion for summary judgment in full.

Respectfully Submitted on May 29, 2019

/s/ Paula Dinerstein
Paula Dinerstein, DC Bar # 333971
Public Employees for Environmental Responsibility
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 265-7337
pdinerstein@peer.org

*Counsel for Plaintiff*